**40TH STREET AND FAIRMOUNT AVE-
NUE CHURCH OF GOD, its Members
and its Duly Incorporated Body
and
Reverend Horace A. Hawes, Individually
and other Members Similarly Situated,**

v.

**Paul STOVER, Overseer of National Body
of Church of God, Cleveland,
Tennessee
and
The National Body of the Church of God,
Cleveland, Tennessee.**

Civ. A. No. 70–938.

United States District Court,
E. D. Pennsylvania.

July 21, 1970.

Harold L. Randolph, Philadelphia, Pa.,
for plaintiffs.

Herman Blumenthal, of Fine, Staud,
Silverman & Grossman, Philadelphia,
Pa., for defendants.

OPINION

HIGGINBOTHAM, District Judge

INTRODUCTION

More than 25 years ago, Mr. Justice
Jackson reminded our nation and the
Courts that, "if there is any fixed star
in our constitutional constellation, it is
that no official, high or petty, can pre-
scribe what shall be orthodox in politics,
nationalism [or] religion [1]."

Today, this Court is being requested
to decide what should be the orthodoxy
and what is fair in the policy making
procedures of a religious denomination
known as the "National Body of the
Church of God, Cleveland, Tennessee" as
to the latter's relationship to the 40th
Street and Fairmount Avenue Church of
God and its members in Philadelphia.
In substance, plaintiffs charge that the
National Body, prior to 1964, operated
two churches, one known as the "White"
and the other as the "Colored Work"
Church and that when, in 1964, the
White and Colored Work Churches
merged into a single structure, Negroes,
and particularly the members of the
40th Street and Fairmount Avenue

---

1. West Virginia State Board of Education v. Barnette, 319 U.S. 624, 642, 63 S.Ct. 1178, 1187,
87 L.Ed. 1628 (1943).

Church, then a "Colored Work" Church, were denied the power of effective participation within their denomination. Using a broad unrestrained brush, the plaintiffs here charge the National Body with extraordinary racists' practices, including "that the Church of God at Cleveland, Tennessee, by excluding Negroes from their own policy-making establishments has effectively denied your plaintiffs their constitutional rights under the Fourteenth Amendment and the Fifth Amendment of the United States Constitution," and that the National Body has breached "their freedom of religion under the First Amendment in that they are not given the right of free determination of their religious beliefs and are being denied the use of their property without due process." (Paragraphs 19 and 20, Plaintiffs' Complaint.)

█ If I were dealing with an aspect of state action, such as a legislative act or an agency of a state or municipal government, I would be required to ascertain whether the defendants' actions were racially discriminatory. But the First Amendment precludes this Court from making a judgment when those issues are solely intertwined within private religious denominational practices.

█ While today plaintiffs charge their National Body with conservative or reactionary racial policies, in other jurisdictions national religious bodies have been challenged for pursuing liberal or racially integrated philosophies. Yet, whether the challenged policy is conservative or liberal, racially restrictive or interracial, the courts cannot adjudicate the orthodoxy of the religious policy and give relief to either group.

█ In 1968 the state courts of Georgia were requested to decide a dispute between the parent body of the "Presbyterian Church in the United States" and two local Savannah, Georgia Presbyterian Churches. The local Georgia churches sought independence from the parent body and possession of their Savannah churches because purportedly the nation-

al body had started "revolutionary, fundamental unlawful and radical diversion from the Presbyterian faith." The purported radical diversion was the national body's recommendations on "civic, economic, social and political matters," such as its "* * * involvement, through the National Council of Churches for Christ in the Mississippi Delta project, a civil rights movement sponsored by several organizations," and the National Body's questioning of our nation's Vietnam strategy and the bombing of North Vietnam, and the National Body's "ordaining of women as ministers and ruling elders." The Georgia Courts ruled in favor of the local churches granting them the autonomy sought because of the National Church's purported breach of "basic tenets" of the Presbyterian Faith. Presbyterian Church in United States v. Eastern Hts. Presbyterian Church, 224 Ga. 61, 159 S.E.2d 690 (1968). The United States Supreme Court reversed the Georgia decrees and noted that the logic of earlier cases "leaves the civil courts *no* role in determining ecclesiastical questions in the process of resolving property disputes." 393 U.S. 440, 89 S.Ct. 601, 605, 21 L. Ed.2d 658. The Court re-emphasized the holding of Watson v. Jones, 13 Wall. 679, 20 L.Ed. 666 (1872), where it was held that:

"All who unite themselves to such a body [the general church] do so with an implied consent to [its] government, and are bound to submit to it. But it would be a vain consent and would lead to the total subversion of such religious bodies, if any one aggrieved by one of their decisions could appeal to the secular courts and have them reversed. It is of the essence of these religious unions, and of their right to establish tribunal for the decision of questions ⁄arising among themselves, *that those decisions should be binding in all cases of ecclesiastical cognizance*, subject only to such appeals as the organization itself provides for." Presbyterian Church in the United States et al. v. Mary Eliza-

beth Blue Hull Memorial Presbyterian Church et al., 393 U.S. 440, 446, 89 S. Ct. 601, 604, 21 L.Ed.2d 658 (1969). (Emphasis added.)

Similarly, in the instant case, this civil court cannot determine the racial and ecclesiastic questions which have been raised pertaining to the purported breach of orthodoxy and the purported perpetration of racist policies by the National Body of the Church of God, Cleveland, Tennessee.

For who is entitled to use the 40th Street and Fairmount Avenue Church of God as a place of worship and shepard its membership is the gist of this lawsuit that counsel have enshrined with constitutional and legal arguments.

## FACTS

Plaintiffs seek an order restraining the defendants from interfering with the conduct of the 40th Street and Fairmount Avenue Church and its alleged minister, the Reverend Horace A. Hawes. Plaintiffs further seek to restrain the defendants or any official of the Commonwealth of Pennsylvania from enforcing a state court judgment until a three-judge federal court can be convened to hear plaintiffs' request for a preliminary injunction. The plaintiffs in this suit are captioned as "40th Street and Fairmount Avenue Church of God, its Members and its Duly incorporated Body and Reverend Horace A. Hawes, Individually, and Others Similarly Situated." The defendants are "The National Body of the Church of God, The General Assembly of the Church of God and one of its Overseers, Paul Stover."

The verified complaint alleges the following sequence of events:

In June, 1967 the National Body through its Overseer, Paul Stover, sought to exclude the plaintiff, Reverend Hawes, from conducting services at the 40th Street and Fairmount Avenue Church by attempting to defrock him of his ministry in the Church of God. Reverend Hawes refused to be bound by the National Body's disciplinary procedures.

The membership of 40th Street and Fairmount Avenue Church allegedly decided not to align itself with the National Body after Reverend Hawes' purported defrocking because it lacked a proper voice in the policy making National Body of the denomination. This lack of influence at the national level is allegedly due to the 1964 merger of the "White" and "Colored Work" Churches into a single structure without positions of power for delegates from Negro or "Colored Work" Churches in the merged structure. 40th Street and Fairmount Avenue Church was formerly one of the "Colored Work" Churches and elected, through Reverend Hawes, not to accept the merger.

An equity suit was commenced in the Common Pleas Court of the Commonwealth of Pennsylvania by the 40th Street and Fairmount Avenue Church against Reverend Hawes. See, verified copy of the State Court proceedings, in 40th Street and Fairmount Avenue Church of God v. Horace A. Hawes, Court of Common Pleas, September Term, 1967, No. 1594, in Equity. The plaintiffs in this suit insist that actually the suit was brought by the General Assembly of the Church of God, Cleveland, Tennessee, but that the national body had erroneously captioned itself the 40th and Fairmount Avenue Church. The result of that litigation was the issuance of a decree restraining Reverend Hawes from conducting services at the 40th Street and Fairmount Avenue Church. An appeal taken to the Supreme Court of Pennsylvania was quashed without opinion.

Unless a preliminary injunction is issued, plaintiffs aver that their constitutional rights under the First and Fourteenth Amendments will be denied. Since the plaintiffs built the 40th Street and Fairmount Avenue Church with their own funds, it is the plaintiffs' apparent theory that defendants have no proprietary interest whatsoever in the church property at 40th Street and Fair-

mount Avenue. Presumably, although not alleged, the lack of any proprietary interest in the church premises on the part of the defendants means they have no right to determine who should use the 40th Street and Fairmount Avenue Church. The combination of the defendants' assertion of proprietary interest in the 40th Street and Fairmount Avenue Church of God by determining who shall be its minister and the alleged systematic exclusion of Negroes from policy roles in the National Body operate to deny plaintiffs of their right to Freedom of Religion and Equal Protection.

In its answer, the defendants deny many of the plaintiffs' allegations regarding who constitutes the membership of the 40th Street and Fairmount Avenue Church. Secondly, the defendants deny the gist of the plaintiffs' allegations regarding the General Assembly as merged, its policies, and its actions toward Reverend Hawes and its Negro membership generally. The defendants incorporate by reference the pleadings and findings of the State Court proceedings in the Common Pleas Court which would operate, on defendants' theory, to either bar this suit or at the very least to prevent this Court from staying the execution of the State Court decree restraining Reverend Hawes.

The parties in the state court proceedings were 40th Street and Fairmount Avenue Church as plaintiff, and Reverend Horace A. Hawes as defendant. From the pleadings of the state court proceedings it appears that two issues decisive to this litigation on defendants' theory were before the state courts. The state court decided whether the 40th Street and Fairmount Avenue Church ever affiliated with and subjected itself to the General Assembly. The state court also adjudicated whether Reverend Hawes was the minister of the 40th Street and Fairmount Avenue Church. See, ¶2, ¶3 of Answer in 40th Street and Fairmount Avenue Church of God v. Horace A. Hawes, Court of Common Pleas, September Term, 1967, No. 1594 in Equity. The state court judge

having resolved both of these issues against Reverend Hawes' contentions, ordered him not to interfere with the premises at 40th Street and Fairmount Avenue Church and not to conduct services at those premises. (Conclusion of Law No. 4 and Decree.) The Supreme Court of Pennsylvania dismissed the appeal by Reverend Hawes because the appeal was never perfected within the required period of time.

Although the defendants have raised the issues of whether this suit is barred or of whether a federal court is prohibited in any case from enjoining a state court judgment, the issue of overriding importance is whether this Court has jurisdiction over the subject matter of this suit. The plaintiffs have, after the filing of the Answer and oral argument on the motion to dismiss, moved for leave to file an amended complaint. For the reasons hereafter stated, I have decided to dismiss the complaint for lack of subject matter jurisdiction, to deny the request for a preliminary injunction, and to deny to the plaintiffs the right to file an amended complaint

## DISCUSSION

■ The plaintiffs do not ask this Court to resolve the question of who has legal title to 40th Street and Fairmount Avenue Church. For the essence of what the plaintiffs seek is an adjudication by this Court that plaintiff, Reverend Hawes, has the "right" to conduct services at 40th Street and Fairmount Avenue Church. Such an adjudication would require an inquiry into whether the defrocking procedures of Reverend Hawes were proper because the defendants have asserted a right of ecclesiastical direction over 40th Street and Fairmount Avenue Church rather than a right of ownership in the physical structure. The First Amendment prohibits this Court from inquiring into the appropriateness of the defrocking of Reverend Hawes. Presbyterian Church in the United States et al. v. Mary Elizabeth Blue Hull Memorial Presbyterian

Church, 393 U.S. 440, 89 S.Ct. 601, 21 L.Ed.2d 658 (1969).

 Were I asked to resolve who has legal title to the premises, I could conduct the circumscribed inquiry along the lines of neutral principles of law required by the Constitution. But here the plaintiffs ask this Court to intervene with the adjudication of the church tribunal that revoked Reverend Hawes' ministry in the Church of God (Finding of Fact No. 25 in 40th Street and Fairmount Avenue Church of God v. Horace A. Hawes, *supra,*) for deviating from established church doctrine. Whether Reverend Hawes' departure from church doctrine was prompted by the elimination of the separate "Colored Work" headquarters or the appointment of a "White" overseer for his church, a civil court is not allowed to decide whether this reason justified Reverend Hawes' deviation.[2]

This Court thus lacks subject matter jurisdiction over this suit since to decide the issues presented would violate the First Amendment.

Plaintiffs proffered amended complaint fails to correct the defect of lack of subject matter jurisdiction. Rather the plaintiffs attempt to cure another jurisdictional defect present on the face of the complaint since there is a lack of diversity, the alleged basis of jurisdiction, between all of the named parties. The citizenship[3] of all the plaintiffs is alleged as being in Pennsylvania and the citizenship of defendant Paul Stover is alleged to be that of Pennsylvania. Plaintiffs' attempt to cure the lack of complete diversity required under 28 U.S.C. § 1332 would be unsuccessful since defendant, Paul Stover, is still named as defendant along with other persons who are not allegedly citizens of Pennsylvania. Since the proposed amended complaint does not cure the major defect of lack of subject matter jurisdiction under the First Amendment nor the lack of complete diversity, I will not allow the filing of the amended complaint under Rule 15, Federal Rules of Civil Procedure.

Finally, plaintiffs' request for the convening of a three-judge court is denied since no state statute is attacked as unconstitutional in the complaint as required by 28 U.S.C. § 2281.

---

2. As noted above, the Supreme Court has condemned a similar inquiry by a civilian court. The Georgia Court's determination that certain social and religious philosophies—their positions on civil rights and the War in Vietnam—on the part of the National Church Body justified a departure from the National Body by the local churches was held to violate the First Amendment. Presbyterian Church v. Mary Elizabeth Blue Hull Memorial Presbyterian Church, fn. 1, 393 U.S. 440, 442, 89 S.Ct. 601, 602, 21 L.Ed. 2d 658.

3. The complaint actually alleges the residence of the parties, but plaintiffs' brief and supplemental brief alleges the citizenship of the parties.